```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                 Civil No. 17-706(DSD/KMM)
```

Essie Peschong and
D.P., E.P.P., and E.C.P.,
minors, by and through their parent
and natural guardian, Essie Pechong,

        Plaintiffs,

v.                                                **ORDER**

Children's Healthcare, d/b/a
Children's Hospitals and Clinics
of Minnesota, and Alice Swenson, M.D.,

        Defendants.


    Scott Matthew Cody, Esq., Kyle Kosieracki, Esq. and Tarhish Cody, PLC, 6337 Penn Avenue South, Richfield, MN 55423, counsel for plaintiffs.

    Jonathan P. Norrie, Esq. and Bassford Remele, 100 South 5th Street, Suite 1500, Minneapolis, MN 55402, counsel for defendants.


    This matter is before the court upon the motion for judgment on the pleadings by defendants Children's Healthcare, d/b/a Children's Hospitals and Clinics of Minnesota (Children's), and Alice Swenson, M.D. Also before the court is the motion for partial summary judgment by plaintiffs Essie Peschong; D.P., a minor, by and through his parent and natural guardian, Essie Peschong; E.P.P., a minor, by and through his parent and natural guardian, Essie Peschong; and E.C.P., a minor, by and through his parent and natural guardian, Essie Peschong. Based on a review of the file, record, and proceedings herein, the court grants the

motion for judgment on the pleadings and denies the motion for partial summary judgment as moot.

## BACKGROUND

This civil rights action arises out of a Child in Need of Protection or Services (CHIPS) proceeding in Hennepin County that resulted in D.P.'s seven-month placement in foster care. D.P. was born to Essie Peschong in 2004 with dysmorphic features, a bone disorder, and obstructions within his upper airway. Compl. ¶¶ 7-8. D.P. received his primary medical care from Children's from 2004 to 2007, and thereafter from Gillette Children's. Id. ¶¶ 9, 14. Providers from Children's continued to treat D.P. after the transfer to Gillette. Id. ¶ 14.

D.P. was in and out of the hospital during his first eleven years; he was hospitalized for forty-one days, treated nine times in the emergency room, and underwent numerous surgeries, procedures, and sleep studies.[1] Id. ¶ 11. Among other ailments, D.P. suffered from persistent respiratory illness and obstructive sleep apnea. Id. ¶ 12. Over the years, D.P. used supplemental oxygen to manage his symptoms and regularly used a wheelchair. Id. ¶¶ 11-12, 20. On July 1, 2014, D.P. underwent a successful

---

[1] The court will not detail all of D.P.'s health issues or care, but will focus instead on the facts directly relevant to the instant motions.

2

tracheostomy[2] procedure to relieve his sleep apnea.  Id. ¶¶ 18-19. According to Ms. Peschong, after the procedure, D.P. rarely used supplemental oxygen or a wheelchair.  Id. ¶ 20.  D.P.'s ability to sleep increased dramatically, as did his behavior, school performance, and social skills.  Id. ¶ 21.

In approximately February 2015, Cindy Brady, a nurse who last provided care to D.P. in 2008, reported to Dr. Swenson, a child abuse pediatrician at Children's, that D.P. may be the victim of medical child abuse.[3]  Id. ¶¶ 22-24.  Specifically, Brady reported that D.P. continually used supplemental oxygen without cause and opined that a tracheostomy may not have been necessary.  Id. ¶ 24. Brady asked Dr. Swenson to review D.P.'s medical records to determine whether Ms. Peschong was abusing D.P.  Id. ¶ 27.

On June 17, 2015, Dr. Swenson wrote a report concluding that Ms. Peschong "appears to be misrepresenting [D.P.'s] medical conditions in order to obtain care that [D.P.] does not need and

---

[2] A tracheostomy is "a surgically created hole through the front of your neck and into your windpipe (trachea) .... [It] provides an air passage to help you breathe when the usual route for breathing is somehow obstructed or impaired." Mayo Clinic, http://www.mayoclinic.org/tests-procedures/tracheostomy/home/ovc-20233993 (last visited July 7, 2017).

[3] "Medical child abuse" occurs "when a parent or guardian ... seek[s] excessive medical care for their child, even to the point of creating symptoms in the child, or report[s] symptoms that are not there to medical providers in order to have interventions performed, and for the child to have the sick role." In re Welfare of E.P., No. A16-0281, 2016 WL 4163219, at *1 (Minn. Ct. App. Aug. 8, 2016).

that may, in fact, be harmful." Id. ¶ 28; First Cody Decl. Ex. A, at 4. She noted that D.P.'s medical records indicate "a clear long-standing pattern of mother reporting symptoms that are not observed by the medical staff." First Cody Decl. Ex. A, at 4. Dr. Swenson further noted that although D.P. does have "documented medical disorders," they did not warrant his ongoing use of oxygen, use of a wheelchair, or a tracheostomy. Id. Dr. Swenson recommended that D.P. "be placed in a safe environment where medical interventions can be removed as quickly as possible beginning with the most invasive interventions." Id.

On June 22, 2015, Dr. Swenson submitted the report to Hennepin County Child Protective Services (HCCPS). Compl. ¶ 43. HCCPS thereafter filed an ex-parte child protection petition with the Hennepin County Juvenile Court asserting that D.P. was the victim of medical child abuse by his mother. Id. ¶ 48. The petition was based exclusively on the report. Id. ¶ 49. On July 13, 2015, the juvenile court granted the petition and removed D.P. from his home and family.[4] Id. ¶¶ 61, 63; Norrie Decl. Ex. 3, at 1. HCCPS placed D.P. at Children's where he remained as an inpatient for more than a week.[5] Compl. ¶ 64. Doctors downsized D.P.'s

---

[4] Until that time, D.P. had lived with Ms. Peschong and his two siblings, E.P.P. and E.C.P., both of whom are plaintiffs in this case. Id. ¶ 62.

[5] It is unclear from the record, but it appears that D.P. may have been hospitalized at Children's on July 8, several days before the court granted the petition. Norrie Decl. Ex. 1, at 2.

4

tracheostomy tube during his hospitalization. Id. ¶ 65. Ms. Peschong was not permitted to see or communicate with D.P. during that time, nor was she aware of or involved in decisions regarding his medical care. Id. ¶¶ 64-65.

After his release from Children's, D.P. was placed in foster care with family members. Id. ¶ 68. Although not in the complaint, the record properly before the court establishes that Ms. Peschong, who was represented by counsel, challenged the basis for the Petition throughout the proceedings. In July and August, she moved twice - both times unsuccessfully - for the juvenile court to reconsider the removal order. Norrie Decl. Ex. 3, at 1. On December 23, 2015, Ms. Peschong moved to dismiss the petition, arguing that its allegations were untrue and belied by the medical records. Id. Ms. Peschong also moved for sanctions against HCCPS for its alleged failure to reasonably investigate the matter before filing the petition. Id. at 2. The court denied both motions, concluding that there were "sufficient facts to support a juvenile protection matter under current law, and the issues raised by [Ms. Peschong] may be appropriately addressed at trial." Id. at 4.

On January 5, 6, and 7, 2016, the court held a bench trial on the matter. Norrie Decl. Ex. 1, at 1. Ms. Peschong was present and represented by counsel. Id. D.P. was represented by counsel, but was not present. Id. The court heard testimony from thirteen witnesses, including Dr. Swenson and several medical professionals

called by Ms. Peschong, all of whom were subject to cross-examination. Id. ¶ 1.0. The court also admitted twenty-three exhibits, which included, among other documents, Dr. Swenson's report and hundreds of pages of medical records. Id. ¶¶ 2.0, 25.0-25.2.

The court carefully assessed each witness's credibility. Id. ¶¶ 11.0-24.0. As to Dr. Swenson, the court determined that her testimony was credible "in all respects." Id. ¶ 15.0. The court specifically noted that Dr. Swenson was "knowledgeable about the facts of this matter," her demeanor was "forthcoming and earnest," and her "answers were thoughtful and her testimony was persuasive." Id. The court gave "significant weight" to her testimony. Id. In contrast, the court concluded that Ms. Peschong was a "poor historian - particularly regarding the child's medical history" and gave little weight to her testimony. Id. ¶ 21.0. The court also gave little weight to the medical professionals called by Ms. Peschong because they lacked comprehensive knowledge of D.P.'s medical history. Id. ¶¶ 16.0, 17.0, 18.0, 19.0, 20.0.

On February 5, 2016, after weighing the evidence and after the parties had the opportunity to submit post-trial briefing, the court concluded that D.P. was a victim of medical child abuse:

> Respondent has subjected the child to numerous unnecessary medical procedures and interventions, and as a result the child is without the required care for the child's physical and mental health. Respondent mother has not corrected the situation that led to the child's removal from the home, and has demonstrated an inability

> or unwillingness to provide the child with only medically necessary care. Thus, the child is in need of protection or services.

Id. at 21 ¶¶ 1.0, 1.1; see also id. ¶¶ 27.0-39.4. The court ordered legal custody of D.P. transferred to HCCPS for continued foster care placement in a third-party non-relative home.[6] Id. at 21 ¶ 2.0. The court also ordered Ms. Peschong to complete a case plan, which required her to participate in individual and family therapy, follow all recommendations of D.P.'s medical providers, ensure that D.P. has one primary care provider, maintain safe and suitable housing, and cooperate with HCCPS and the appointed Guardian ad Litem. Id. ¶¶ 3.0-3.5.

Ms. Peschong immediately appealed, arguing, in part, that Dr. Swenson's report and testimony were "ill-informed" because she did not (1) review all of D.P.'s medical records, (2) speak to D.P.'s specialists, (3) examine D.P., or (4) interview Ms. Peschong. Second Norrie Decl. Ex. 8, at 40. Ms. Peschong further argued that the report and Dr. Swenson's testimony were "riddled with errors" and that Dr. Swenson "either exaggerated her study of D.P.'s medical records or knowingly misrepresented their contents." Id. at 41. The Minnesota Court of Appeals affirmed the lower court and in doing so specifically rejected Ms. Peschong's objections to Dr. Swenson's "inferences, opinions, and conclusions." In re Welfare

---

[6] D.P. was removed from his relative's home due to conflicts with other people in that home. Id. at 18 n.107.

7

of E.P., 2016 WL 4163219, at *4.

Ms. Peschong filed a petition for review with the Minnesota Supreme Court, again challenging Dr. Swenson's report and testimony. Norrie Decl. Ex. 6, at 3-5. The court denied review. Id. Ex. 7. D.P. was eventually returned to Ms. Peschong's custody after the court concluded that "all medically unnecessary interventions have been appropriately addressed" and that "all necessary components" of Ms. Peschong's "case plan have been satisfactorily completed." Second Cody Decl. Ex. M, at 2.

On March 7, 2017, plaintiffs filed this suit against Children's and Dr. Swenson alleging that Dr. Swenson's report, which served as the basis for the CHIPS petition, was false. Plaintiffs raise eight claims: Count I asserts a claim by Ms. Peschong that Children's and Dr. Swenson violated Minn. Stat. § 626.556 subdiv. 5; Count II asserts a claim by D.P. that Dr. Swenson violated the Fourth Amendment and 42 U.S.C. § 1983; Count III asserts a claim by all plaintiffs that Children's and Dr. Swenson violated their right to family integrity in violation of 42 U.S.C. § 1983; Count IV asserts a claim for defamation and defamation per se against Children's and Dr. Swenson by Ms. Peschong and D.P.; Count V asserts a claim for false imprisonment by D.P. against Children's and Dr. Swenson; Count VI asserts a claim for intrusion upon seclusion by all plaintiffs against Children's and Dr. Swenson; Count VII asserts a claim for

intentional infliction of emotional distress by all plaintiffs against Children's and Dr. Swenson; and Count VIII asserts a claim by D.P. against Children's for negligent supervision.[7]  Defendants now move for judgment on the pleadings.  Plaintiffs move for partial summary judgment on Counts I and VI and on several of defendants' affirmative defenses.

## DISCUSSION

### I. Motion for Judgment on the Pleadings

#### A. Standard

The same standard of review applies to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6).  Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Although a complaint need not contain detailed factual

---

[7] Plaintiffs filed an amended complaint on March 8, 2017. ECF No. 4.

allegations, it must raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside of the pleadings under Rule 12(c). Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). In this case, the documents relevant to the CHIPS proceeding are necessarily embraced by the pleadings and are properly considered.

**B. Collateral Estoppel**

Defendants argue that plaintiffs are collaterally estopped from pursuing their claims because Ms. Peschong's numerous challenges to Dr. Swenson's report in the underlying case were heard and rejected. The doctrine of collateral estoppel bars the re-litigation of an issue that was "distinctly contested and directly determined" in an earlier adjudication. Hauschildt v. Beckingham, 686 N.W.2d 829, 837-38 (Minn. 2004). The issue must have been "necessary and essential to the resulting judgment" in the earlier action. Id. at 837. "[I]ssues actually litigated in

10

a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." Migra v. Warren City Sch. Dist. Bd., 465 U.S. 75, 83 (1984). Under Minnesota law, collateral estoppel is appropriate when the following four elements are met:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

Ill. Farmers Ins. Co. v. Reed, 662 N.W.2d 529, 531 (Minn. 2003). Plaintiffs contest whether the first, third, and fourth elements are met.

### 1. Identity of Issues

Plaintiffs first argue that the accuracy of Dr. Swenson's report, which the parties agree is the gravamen of the instant complaint,[8] was not at issue in the CHIPS proceeding. The court disagrees.

As set forth above, the documents from the CHIPS proceeding establish that Ms. Peschong attacked the report and corresponding petition repeatedly throughout those proceedings, including on appeal. Indeed, the report's veracity appears to have been the

---

[8] All of the claims asserted rely on the premise that Dr. Swenson's report was false. See Am. Compl. ¶¶ 75-79, 83-85, 89-92, 96-97, 101-03, 109-12, 120-23, 127-30, 132-36, 138-41.

11

central feature of Ms. Peschong's defense to the petition. The fact that the juvenile court, in ruling against Ms. Peschong, did not expressly state that the report was accurate is of no moment. Indeed, the court found Dr. Swenson's testimony to be credible "in all respects" and in doing so, also implicitly found the report to be credible.[9] Moreover, the court's ultimate finding - that D.P. was the victim of medical child abuse - corresponds to the findings in the report. As a result, the material issue in both proceedings is identical.

### 2. Privity

Plaintiffs next argue that E.C.P. and E.P.P. were not parties to the CHIPS proceeding or in privity with Ms. Peschong or D.P., and therefore cannot be estopped from pursuing their claims here.[10] The court again disagrees.

Privity "expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." Rucker v. Schmidt, 794 N.W.2d 114, 118 (Minn.

---

[9] Plaintiffs point to no differences between Dr. Swenson's testimony during the CHIPS proceeding and her report.

[10] E.C.P. and E.P.P. have alleged a violation of the right to family integrity under § 1983, intrusion upon seclusion, and intentional infliction of emotional distress. Both are minors and their claims are brought by and through Ms. Peschong as their parent and natural guardian.

2011) (internal quotation marks omitted) (quoting Margo-Kraft Distribs., Inc. v. Minneapolis Gas Co., 200 N.W.2d 45, 47 (Minn. 1972)). "Privies to a judgment are those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation." Id. (internal quotation marks omitted) (quoting Hentschel v. Smith, 153 N.W.2d 199, 206 (Minn. 1967)). Minnesota courts find privity to exist for "those whose interests are represented by a party to the action." Id. The question of privity is determined on a case-by-case basis. Id.

Here, Ms. Peschong and her children have a mutual legal interest in keeping their family together. That interest was squarely at issue - and vigorously defended by Ms. Peschong - in the CHIPS proceeding. Plaintiffs do not offer an explanation as to how their interests diverge for present purposes, nor do they adequately explain how E.C.P. and E.P.P. were prejudiced by not being parties to the CHIPS proceeding. As a result, the court finds that E.C.P. and E.P.P. are in privity with Ms. Peschong for purposes of collateral estoppel.[11]

### 3. Full and Fair Opportunity to Litigate

Plaintiffs lastly argue that they did not have a full and fair opportunity to litigate the issue of the report's accuracy because

---

[11] The court need not decide whether E.C.P. and E.P.P. are in privity with D.P. given their privity with Ms. Peschong.

13

of the limited discovery and motion practice available in the CHIPS proceedings. But plaintiffs fail to identify how such procedural limitations affected their ability to litigate the accuracy of the report. Indeed, based on the record before the court, it appear that plaintiffs were able to comprehensively explore the report's accuracy in the underlying case. Ms. Peschong filed pre-trial motions challenging the contents of the report; participated in a three-day trial, during which her lawyer called witnesses and cross-examined adverse witnesses, including Dr. Swenson; filed post-trial papers; and appealed the court's findings to the Minnesota Court of Appeals. Thus, the court is satisfied that plaintiffs had a full and fair opportunity to litigate the issue presented here in the state court. Courts have held the same in cases involving underlying matters with similar procedural limitations. See Erickson v. Horing, No. 99-1468, 2001 WL 1640142, at *10 (D. Minn. Sept. 21, 2001) ("Plaintiffs' allegation that they did not have a full and fair opportunity to litigate the fraud issue in the state court because they were not permitted any discovery does not preclude the Court from finding that an issue was 'litigated' for collateral estoppel purposes."); see also Coley v. Landrum, No. 1:14-00956, 2016 WL 4919985, at *5 (S.D. Ind. Sept. 15, 2016), aff'd sub nom. Coley v. Abell, No. 16-3635, 2017 WL 1166874 (7th Cir. Mar. 29, 2017) ("[T]he juvenile court found probable cause existed to support the removal and continued

14

detention of Coley's children.  Because a determination that probable cause did not exist is required for Coley to prevail on her claims in this case, Coley is barred by the doctrine of issue preclusion from raising those claims here."); Chalmers v. Ozaukee Cty., No. 13-686, 2015 WL 1219594, at *3 (E.D. Wis. Mar. 17, 2015) (concluding that the state court's finding of probable cause was dispositive of the federal claim that removal of the children violated the plaintiff's due process right to familial integrity).

Because the elements of collateral estoppel have been met, plaintiffs are barred from re-litigating the accuracy of the report.  As a result, plaintiffs' claims, each of which depends on a determination that the report is false, fail on the merits.

**II.  Partial Summary Judgment Motion**

Because plaintiffs are collaterally estopped from bringing their claims, the court will deny their motion for partial summary judgment as moot.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   The motion for judgment on the pleadings [ECF No. 14] is granted;

2.   The motion for partial summary judgment [ECF No. 20] is denied as moot; and

    3.    The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 14, 2017

                                                         s/David S. Doty
                                                         David S. Doty, Judge
                                                         United States District Court