# United States Court of Appeals
## For the Eighth Circuit

No. 17-2828

Essie Peschong; D.P.; E.P.P.; E.C.P., minors, by and through their parent and natural guardian, Essie Peschong

*Plaintiffs - Appellants*

v.

Children's Healthcare, doing business as Children's Hospitals and Clinics of Minnesota; Alice Swenson, M.D.

*Defendants - Appellees*

Appeal from United States District Court
for the District of Minnesota - Minneapolis

Submitted: June 14, 2018
Filed: February 27, 2019

Before WOLLMAN, ARNOLD, and KELLY, Circuit Judges.

WOLLMAN, Circuit Judge.

Essie Peschong and her three minor children, D.P., E.P.P., and E.C.P., (collectively, the Peschongs) appeal the district court's[1] dismissal of their complaint against Children's Healthcare and Alice Swenson, M.D., arguing that the district court erred in applying the doctrine of collateral estoppel to their claims. We affirm.[2]

I.

Since his birth in 2004, D.P. has undergone numerous medical examinations, tests, and surgeries for various conditions. Children's Healthcare provided D.P.'s primary care from 2004 through 2007. As part of D.P.'s medical care, he received supplemental oxygen and used a wheelchair. By 2015, D.P. had undergone two adenoidectomies, a tonsillectomy, a turbinectomy, numerous laryngoscopies and bronchoscopies, and a half dozen sleep studies. D.P. had also spent forty-one days of his life hospitalized due to breathing difficulties and had been treated in the emergency room nine times for reactive airway disease and pneumonia.

In 2015, Nurse Practitioner Cindy Brady contacted Dr. Swenson with concerns that D.P. was suffering from medical child abuse. Dr. Swenson reviewed D.P.'s medical records and concluded in a report (the report, or Swenson Report) that Essie Peschong "appears to be misrepresenting [D.P.'s] medical conditions in order to obtain care that D.P. does not need and that may, in fact, be harmful." Swenson Report 4. Dr. Swenson submitted the report on June 22, 2015, to Hennepin County

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]We requested on our own motion a copy of the trial transcript of the state court hearing. Peschong has moved to vacate our order to supplement the record, arguing that the parties had agreed that the trial transcript was not, and would not be, a part of the record. Passing no judgment on that assertion, we grant the motion to vacate and will return the transcript to the state court unread. Peschong's alternative motion for leave to file a supplemental brief regarding the transcript is denied as moot.

Child Protective Services, which filed a child protection petition with the Hennepin County Juvenile Court (juvenile court). On December 31, 2015, the juvenile court denied Peschong's motion to dismiss the petition. Following a bench trial in January 2016, the juvenile court adjudicated D.P. a child in need of protection or services and ordered that he be transferred to the Hennepin County Child Protective Services for continued foster care placement, in which he remained for some seven months. The juvenile court's ruling was affirmed by the Minnesota Court of Appeals. Peschong's petition for review was denied by the Minnesota Supreme Court.

The Peschongs filed this action on March 7, 2017, seeking relief under Minnesota and federal law. They alleged that the report was false and caused D.P. to be separated from his family. Children's Healthcare and Dr. Swenson subsequently filed a motion for judgment on the pleadings, which the district court granted, concluding that "because the elements of collateral estoppel have been met, [the Peschongs] are barred from re-litigating the accuracy of the report," a threshold question for each of the Peschongs' district court claims. Peschong v. Children's Healthcare, No. 17-706, 2017 WL 3016767, at *6 (D. Minn. July 14, 2017).

II.

We review *de novo* an order granting a motion for judgment on the pleadings. Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006). We apply Minnesota's law on collateral estoppel, which "precludes a party from relitigating a legal or factual issue that was actually litigated in a prior proceeding and was essential to the judgment rendered." Mandich v. Watters, 970 F.2d 462, 465 (8th Cir. 1992) (citing Hauser v. Mealey, 263 N.W.2d 803, 806 (Minn. 1978)). For collateral estoppel to apply, Children's Healthcare and Dr. Swenson must show: "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the

adjudicated issue." Id. (quoting Kaiser v. N. States Power Co., 353 N.W.2d 899, 902 (Minn. 1984)). The Peschongs argue that collateral estoppel cannot be applied here because the relevant issue—whether the report is credible—was not previously adjudicated. We disagree.

The report's veracity was a central issue in the state court proceedings. The Peschongs have conceded that "[m]ost of the Petition's factual allegations were taken verbatim from the Report." Am. Compl. 8, ¶ 49. Although the similarity between the report and the petition is not dispositive, we agree with the district court that "Ms. Peschong attacked the report and corresponding petition repeatedly throughout [the state court] proceedings, including on appeal." Peschong, 2017 WL 3016767, at *4. The report's credibility was thus necessarily an issue before the Minnesota state courts, and thus not merely an ancillary, undecided matter.

The Peschongs nevertheless argue that collateral estoppel does not apply because neither the juvenile court nor the Minnesota Court of Appeals explicitly stated that the report was credible. As set forth more fully below, however, it is clear that the juvenile court addressed nearly all of the allegedly false statements that the Peschongs had set forth in their Amended Complaint. The juvenile court found those statements credible and also found "in all respects that the testimony of Dr. Alice Swenson was credible." In re Welfare of the Child of Essie Peschong, No. 27-JV-15-3545, slip op. at 4, ¶ 15.0 (Minn. Dist. Ct. Feb. 5, 2016) [hereinafter Juvenile Court Order]. We conclude that the juvenile court implicitly ruled that the report was credible in its entirety and that the Peschongs are thus precluded from relitigating this issue.

III.

We review the district court's application of collateral estoppel in the light of the juvenile court's factual findings. Having compared the allegedly false statements

in the report to the analysis contained in the Juvenile Court Order, we conclude that the juvenile court essentially came to the same conclusions as those set forth in Dr. Swenson's report, as illustrated by the juvenile court's observations set forth in the following paragraphs.

The Peschongs allege that the report falsely stated that D.P. was the victim of medical child abuse. Am. Compl. 8, ¶ 40. The juvenile court concluded that "[D.P.] [wa]s a victim of medical child abuse perpetrated by [Peschong]. [Peschong] has subjected [D.P.] to numerous unnecessary medical procedures and interventions, and as a result [D.P.] is without the required care for [his] physical and mental health." Juvenile Court Order 20, ¶ 1.1.

The Peschongs also allege that the report falsely stated that an "[e]valuation of D.P.'s medical records indicates a clear long-standing pattern of [Peschong] reporting symptoms that are not observed by the medical staff." Swenson Report 3; Am. Compl. 7, ¶ 39. In addressing this issue, the juvenile court stated:

> [T]here are several related yet rejected diagnoses which [Peschong] reported as confirmed, and for which [Peschong] sought treatment that was invasive and harmful to [D.P.]. Many of the symptoms reported by [Peschong] were never observed in a clinical environment under medical observation, and the diagnoses were ruled out by medical professionals.

Juvenile Court Order 9-10, ¶ 29.0. The juvenile court similarly noted:

> [Peschong] reported to medical providers that [D.P.] was unable to walk long distances and could not maintain adequate oxygen saturations. This is not credible. During the time of [Peschong's] claim regarding [D.P.'s] need for supplemental oxygen related to his inability to walk longer distances without tiring, [D.P.] was also actively participating in gymnastics."

-5-

Appellate Case: 17-2828     Page: 5     Date Filed: 02/27/2019 Entry ID: 4760472

Id. at 14, ¶ 32.1.5 (footnotes omitted).  The juvenile court thus concluded that Peschong reported symptoms that were not observed by medical staff and that Peschong's characterization of D.P.'s ability to walk long distances and maintain adequate oxygen saturation was not credible.

The Peschongs next allege that the report falsely stated that "[D.P.] has undergone numerous polysomnography studies, none of which has demonstrated severe sleep apnea." Swenson Report 3; Am. Compl. 7, ¶ 37(d).  Again, the juvenile court disagreed with Peschong's claim, ruling that D.P.'s sleep apnea was "[m]ild to moderate," not severe.  Juvenile Court Order 8, ¶ 28.3.  The juvenile court went on to state that "[Peschong] reported symptoms associated with [D.P.'s sleep apnea] that were never observed by medical providers.  This resulted in multiple invasive and unnecessary medical procedures, which posed a risk to the child's physical safety and emotional wellbeing." Id. at 11, ¶ 31.8.1.  The juvenile court thus explicitly rejected Peschong's characterization of D.P.'s sleep apnea.

The Peschongs additionally allege that the report falsely stated that "D.P. has been tethered to external oxygen for his entire life with no clear reason." Swenson Report 4; Am. Compl. 7, ¶ 38.  Although the juvenile court could not determine the "exact amount of time [D.P.] was actively using supplemental oxygen," Juvenile Court Order 14, ¶ 32.1.4, the court noted that "[D.P.] has a 'lifetime' prescription for supplemental oxygen." Id. at 13, ¶ 32.1.1 (footnote omitted). The court further noted that although "[Peschong] testified that [D.P.] no longer needed supplemental oxygen following his tracheostomy, [] Dr. Smeltzer renewed [D.P.'s] oxygen prescription *after* the surgery, in November of 2014." Id. at 13, ¶ 32.1.3 (footnote omitted). Furthermore, "[o]n or about July 8, 2015, [Peschong] [] told investigation child protection social worker Ken Maher that she would provide [D.P.] with oxygen when he appeared tired or out of breath." Id. at 13, ¶ 32.1.2 (footnote omitted).  When the report is viewed as a whole, we conclude that the juvenile court agreed that D.P. was using supplemental oxygen up to the point when he was removed from the

Peschongs' home. Although the juvenile court did not employ the report's language verbatim, it reached the same conclusion as that set forth in the report.

The Peschongs further allege that the report falsely stated that "[D.P.] was repeatedly noted to have no real need for supplemental oxygen" and that "[p]roviders began expressing skepticism about D.P.'s diagnoses and medical needs." Swenson Report 3; Am. Compl. 7, ¶ 37(e) and (f). The juvenile court observed, however, that D.P. was referred to Dr. Swenson because Nurse Practitioner Brady expressed concerns regarding medical child abuse. Juvenile Court Order 7, ¶ 25.1. Specifically, "Ms. Brady was concerned that [D.P.] was on supplemental oxygen for a long period of time and a trach was placed in [D.P.] without any objective reason to do so. Dr. Paula Mackey, the child's former primary care physician at Children's Hospital and Clinics, shared Dr. Brady's concerns." Id. at 7-8, ¶ 25.1 (footnote omitted). Nurse Practitioner Brady's concerns regarding medical child abuse reveal that health care providers were skeptical of D.P.'s diagnoses and medical needs.

The Peschongs also argue that the report falsely stated that D.P.'s oxygen desaturations were not observed while he was an inpatient.[3] Am. Compl. 7, ¶ 37(c); see also Swenson Report 2. The juvenile court stated, however, that "[t]he significant desaturations reported by [Peschong] were not documented in the hospital, and [D.P.] was discharged and/or continued on the same treatments after medical providers confirmed that [D.P.'s] oxygen levels were consistently normal." Juvenile Court Order 12, ¶ 31.8.3 (footnote omitted).

The Amended Complaint raises two fact issues not specifically addressed by the juvenile court. First, the report stated that after D.P. was released from the

---

[3] The report referred to an August 25, 2004, incident. Swenson Report 2. The Amended Complaint characterized the report's statement as a general assertion. Under either characterization, we conclude that the juvenile court addressed the issue or facts embracing the issue.

hospital following his June 18-July 6, 2004, initial hospitalization, he was placed on an "increased calorie formula for failure to thrive, a diagnosis based primarily on [Peschong's] reports of difficulty feeding." Swenson Report 1-2. Second, the report also stated that "D.P. was again hospitalized on 7/12/2004 for increased work of breathing. He was reported to be desaturating at home but no respiratory abnormalities were noted on exam." Id. at 2. Although it did not specifically address these two hospitalizations, the juvenile court, as shown above, repeatedly concluded that Peschong reported symptoms that medical professionals did not observe, resulting in "numerous unnecessary medical procedures and interventions." Juvenile Court Order 20, ¶ 1.1. We thus conclude that given the similarity between the report and the petition, the finding that Dr. Swenson's testimony was credible, and its own detailed findings, the juvenile court necessarily found the report credible.

Finally we reject the Peschongs' argument that the district court's application of collateral estoppel is unfair or inequitable. The district court's order contains no specific reference to the concept of equitableness. Nevertheless, we are satisfied from the district court's reference to relevant Minnesota case law that a finding of equitableness inheres its decision to apply the doctrine in the circumstances of this case. See Hauschildt v. Beckingham, 686 N.W.2d 829, 837 (Minn. 2004) (observing that collateral estoppel is not to be rigidly applied but instead invoked only after a determination of whether its application would work an injustice on the party against whom it is urged).

The judgment is affirmed.

----